IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ERIC S. ESCH, a/k/a BUTTERBEAN )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNIVERSAL PICTURES COMPANY, INC; )<br>NBC UNIVERSAL, INC.; and )<br>ILLUMINATION ENTERTAINMENT )<br>)<br>Defendants. ) | 6:09-cv-02258-JEO |

**MEMORANDUM OPINION**

Before the court is the motion of defendants Universal Pictures Company, Inc. ("Universal"), NBC Universal, Inc. ("NBC"), and Illumination Entertainment ("Illumination"), to dismiss this action pursuant to Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE, on the ground that the complaint fails to state a claim upon which relief can be granted.  (Doc. 7).[1] Additionally, before the court is the motion of the defendants to strike the affidavit of Corey L. Fischer offered in support of the plaintiff's response to the motion to dismiss.  (Doc. 11).  The parties have been afforded an opportunity to brief the relevant issues.  Upon consideration, and as fully discussed below, the court finds that the defendants' motion to dismiss and motion to strike are due to be granted.

**BACKGROUND**

**Procedural History**

The plaintiff, Eric S. Esch ("Esch"), filed a complaint in this court, premised on diversity

---

[1] References herein to "Doc. ___" are to the document numbers assigned by the Clerk of the Court and located at the top of each document.

jurisdiction, against defendants Universal, NBC, and Illumination, alleging that the defendants appropriated his likeness without his consent for use in a film trailer for a movie entitled *Despicable Me*. (Doc. 1 ("Complaint") ¶ 36 ). The complaint further alleges that the defendants appropriated his image in order to gain a "commercial advantage," and that this appropriation has caused Esch injury. (*Id*. ¶ 44).

The defendants filed the current motion to dismiss asserting that "(1) no reasonable juror could conclude that the character at issue is, or is based on, the plaintiff; (2) the movie in which the character appears is constitutionally protected speech; and (3) because the movie is constitutionally protected speech, advertising for that movie is also protected." (Doc. 7 at 5). The plaintiff has filed his response in opposition to defendants' motion, including an affidavit by Corey L. Fischer, a friend and associate of the plaintiff. (Doc. 9 & 9-1). The defendants then filed their motion to strike Fischer's affidavit. (Doc. 11).

**Factual History**

Esch is a resident of Jasper, Alabama. (Compl. ¶ 1). He is a "professional heavyweight boxer, kick boxer, and mixed marital artist ('MMA')." (*Id*. ¶ 9). He has appeared in various commercial productions including movies, television, radio, and video games. (*Id*. ¶ 18-22). The complaint alleges that Esch "is known famously throughout the world as 'Butterbean.'" (*Id* ¶ 10). He is 5'11" tall and weighs over four hundred pounds. (*Id*. ¶ 11). Esch's physical appearance is characterized by a bald head and a round body, and when he appears in fights he wears "American flag-like trunks" and uses "Sweet Home Alabama" by Lynyrd Skynyrd as his theme song. (*Id*. ¶ 12).

The defendants, according to the complaint, are non-Alabama corporations that "acted

together in concert to create a film trailer for the [animated] film titled *Despicable Me*," which was released in July 2010. (*Id*. at ¶¶ 3, 5, 23 & 25). The movie trailer was released on or about July 14, 2009. (*Id*. ¶ 26). The complaint further alleges that the trailer was released with multiple movies including: *Ice Age: Dawn of the Dinosaurs, Harry Potter and the Half-Blood Prince, G-Force, Aliens in the Attic, Bandslam, Shorts, Toy Story 3-D Double Feature,* and *Cloudy with a Chance of Meatballs*. (*Id*. ¶ 27). The trailer at issue previously could be viewed online at http://www.despicable.me/#/home/video. (*Id*. ¶ 29). Esch claims that this "trailer, among other things, prominently includes an animated character that, to a reasonable person, appears to be based on Butterbean and/or his likeness," and that this use "was likely done for commercial reasons to promote future ticket sales of *Despicable Me*." (*Id*. ¶ 30-31). Additionally, Esch alleges that the use of his likeness was done without his permission and that this use has injured him and invaded his privacy. (*Id*. ¶ 32).

The trailer itself depicts the arrival of several American tourists at the Egyptian Pyramids. (Doc. 7 ¶ 5). The character in question appears to be the father of a little boy in the trailer. (*Id*. ¶ 6). He is wearing white shorts with red stripes and a blue tank top. (*Id*. ¶ 9). He is overweight and wearing a cowboy hat. (*Id*. ¶ 8). The song *Sweet Home Alabama* plays for a few seconds when the tour bus arrives at the Pyramids. (*Id*. ¶ 5). There is no mention or reference to boxing during the scene. (*Id*. ¶ 12).

## STANDARD OF REVIEW

In the case of a motion to dismiss filed pursuant to Rule 12(b)(6) this court must view the facts in a light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 1992). This court is required to accept as true all well-pleaded facts. *Erickson v. Pardus*, 551

U.S. 89, 94 (2007).  Under FED. R. CIV. P. 8(a)(2) a plaintiff is required only to plead a "short and plain statement of the claim showing that the pleader is entitled to relief;" however,  the plaintiff is still required to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When taken as true, the pleaded facts must raise a right to relief above the level of mere speculation.  *Id*.  The complaint must present "a plausible claim for relief." *Id*. at 561-62.  This court also is required to draw all reasonable inferences from the complaint in favor of the plaintiff.  *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).  In contrast, this court is not "bound to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 268 (1986); *see also Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  A district court may not dismiss the action based on an "assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."  *Twombly*, 550 U.S. at 563 n. 8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## DISCUSSION

### Motion to Dismiss

Esch's sole claim is that defendants misappropriated his likeness for commercial use in violation of Alabama law.  *See Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003).  A plaintiff has no right of action merely because his name or likeness appears in the public eye. *Minnifield v. Ashcraft*, 903 So. 2d 818, 822 (Ala. Civ. App. 2004) (citing *Schifano v. Greene County Greyhound Park, Inc.*, 624 So. 2d 178, 181 (Ala. 1993)).  It is only when "the publicity is given

for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded." *Id*. (quoting *Schifano*, 624 So. 2d at 181); *see also Allison v. Vintage Sports Plaques*, 136 F. 3d 1443, 1447 (11th Cir. 1998) (same). "The plaintiff must demonstrate that there is a 'unique quality or value in [his] likeness [ ]' that, if appropriated would result in 'commercial profit' to the defendant." *Allison*, 136 F. 3d at 1447 (quoting *Schifano*, 624 So. 2d at 181); *see also Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793 (1995) ("A cause of action for common law misappropriation of a plaintiff's name or likeness may be pled by alleging: (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury.").

### No Reasonable Juror Argument

The defendants first argue that no reasonable juror would conclude that the character at issue is the plaintiff. (Doc. 7 at 5). Esch counters by stating that this is an improper argument to be made on a motion to dismiss because it "begs the Court to weigh evidence and act as a fact finder," which is a function for the jury. (Doc. 9 at 2). Further, the plaintiff states that the complaint contains well-pleaded allegations of misappropriation of his likeness, and that the court must accept these allegations as true at this juncture. (*Id*.)

As previously stated, *Twombly* sets the standard for this court to follow on a motion to dismiss. When the well-pleaded facts are taken as true, the plaintiff still must raise a right to relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. In this case, the facts are that the character depicted in the trailer is overweight and wears a cowboy hat, red and white trunks, and a blue tank top. The song *Sweet Home Alabama* plays in the background as the tour

bus, containing the character at issue and others, arrives at the Pyramids.  As stated above, there is no mention of boxers, boxing or martial arts in the trailer.[2]  Additionally, the court notes that a trailer is a device used by production and film companies as a tool to promote upcoming movies.  Logically, the more a movie is promoted the more likely there will be more ticket sales and higher profits.

In light of all of these facts, this court believes that Esch has pleaded sufficient facts to raise the right to relief above the level of mere speculation.  He has pleaded facts that, when taken as true, arguably demonstrate that there is a unique quality or value in his likeness, that is his unique appearance and public notoriety.  The plaintiff also asserts that Esch's likeness, if misappropriated, could result in commercial profit to the defendants.  Finally, Esch asserts that he did not consent to any use of his likeness in association with *Despicable Me* and this use has allegedly invaded his privacy and injured him.  (Complaint at ¶¶ 41-43).  Whether or not the character at issue is in fact a misappropriation of Esch's likeness is not for the court to decide at this time.  That typically is a matter for review following the completion of discovery.[3]

## First Amendment Protection

The defendants next argue that the "animated character made the basis of plaintiff's complaint is part of a constitutionally protected, expressive work."  (Doc. 7 at 8).  Essentially the defendants state that even if the character at issue is Esch (which they dispute), he is not entitled

---

[2]The defendants also note that "[o]ne defining attribute of the plaintiff is that he is a father of a young boy.  The plaintiff does not allege that he is a father, much less that this attribute is a defining element of his image and likeness."  (Doc. 7 ¶ 24).

[3]The defendants rely, at least in part, on *Polydoros v. Twentieth Century Fox Film Corp*, 67 Cal. App. 4th 318, 79 Cal. Rptr. 2d 207 (1997), for the proposition that "[i]nvasion of privacy claims have been rejected by the courts when there is merely alleged to be some resemblance between an actual person and a character in a work of fiction."  (Doc. 7 at ¶ 19).  This case is not dispositive at this juncture in that it involved a motion for summary judgment and not a motion to dismiss.

to bring an action for misappropriation of that likeness because it was used in a movie which is constitutionally protected under the First Amendment. (*Id*. at ¶ 30 ). In support of their argument, defendants cite *Smith v. Doss*, 37 So. 2d 118 (Ala. 1948); *Doe v. Roe*, 638 So. 2d 826 (Ala. 1994); *J.C. v. WALA-TV, Inc.*, 675 So. 2d 360 (Ala. 1996); and *Campbell v. The Seabury Press*, 614 F.2d 395, 397 (5th Cir. 1980).[4]

*Smith* dealt with a Tuscaloosa, Alabama radio broadcast that depicted the life of a family member of the plaintiffs that was aired without permission. 37 So. 2d at 118-120. The court carved out an exception to the right of privacy allowing the broadcasting of material which is the subject of "legitimate public interest." *Id*. at 120-21. As noted by the court, the individual "made himself a public character." *Id*. at 121. *WALA-TV* concerned a television broadcast involving a minor. Therein, the court held that the story was a subject of "legitimate public interest," and was thus privileged. 675 So. 2d at 362. *Doe* involved the publication of a novel premised on a fictionalized account of the murder of an Alabama mother. The court there held that the character used in the novel, which was admittedly based upon a real person, was privileged as it was based upon a matter of public interest. *See id*., 638 So. 2d at 828 ("Society's interest in the events surrounding this murder was recognized long before Doe wrote her novel.") Therefore, the court found that the protected novel could not form the basis for a claim for inappropriate intrusion into the privacy of a person or misappropriation of a plaintiff's privacy for commercial gain.[5] *Id*. at 829. *Campbell*, also involved a suit by a plaintiff over a book which

---

[4]In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[5]The defendants note *Doe* cites *Notre Dame du Lac v. Twentieth Century-Fox File Corp.*, 44 Misc. 2d 808, 255 N.Y.S.2d 210 (N.Y. Sup. Ct. 1964), *rev'd*, 22 A.D.2d 452, 256 N.Y.S.2d 301, *aff'd*, 15 N.Y.2d 940, 207 N.E.2d 508, 259 N.Y.S.2d 832 (1965), for the proposition that the reasoning would apply to movies. *Id*., 22 A.D. 2d at 457. The court finds that

revealed various intimate details about her life.  The plaintiff brought an action alleging, among other things, that the book constituted an invasion of privacy.  In analyzing the constitutional protection, the court noted that this broad protection encompassed two distinct privileges: "First is the *privilege* to publish or broadcast facts, events, and information relating to public figures.  Second is the *privilege* to publish or broadcast news or other matters of public interest."[6]  *Campbell*, 614 F.2d at 397.[7]  Rejecting her claims for relief, the court found that the matter was of "legitimate public interest."  *Id*.

The court finds the foregoing cases legally and factually inapposite.  The present case does not have the newsworthy or "legitimate public interest" application to fall within the parameters articulated by the courts in the foregoing cases.  *See also Minnifield v. Ashcraft*, 903 So. 2d 818, 823 (Ala. Civ. App. 2004) (holding that the publication of the plaintiff's photographs

---

*Doe* is inapposite since it also deals with the public interest exception.

[6]The court also noted:

The inquiry in determining the applicability of the first privilege focuses on the person to whom the publicity relates and asks whether the individual either by assuming a role of special prominence in the affairs of society or by thrusting himself to the forefront of a particular public controversy in order to influence the resolution of the issues involved has become a public figure.  In contrast, the inquiry in determining the applicability of the second privilege focuses on the information disclosed by publication and asks whether truthful information of legitimate concern to the public is publicized in a manner that is not highly offensive to a reasonable person.  This latter privilege is not merely limited to the dissemination of news either in the sense of current events or commentary upon public affairs.  Rather, the privilege extends to information concerning interesting phases of human activity and embraces all issues about which information is needed or appropriate so that individuals may cope with the exigencies of their period.  *See generally Time, Inc. v. Hill*, 385 U.S. at 388, 87 S. Ct. at 542, 17 L. Ed. 2d at 467; *Thornhill v. Alabama*, 310 U.S. 88, 102, 60 S. Ct. 736, 744, 84 L. Ed. 1093, 1102 (1940).  The ambit of protection offered by the second privilege often encompasses information relating to individuals who either have not sought or have attempted to avoid publicity.  *See* W. Prosser, *supra* at 825-26.  The privacy of such individuals is protected, however, by requiring that a logical nexus exist between the complaining individual and the matter of legitimate public interest.  *See id*. at 826.

*Campbell*, 614 F.2d at 397.

[7]The defendants also cite *Tyne v. Time Warner Entertainment Co.,* for the proposition that the use of Esch's image in a movie cannot be considered commercial misappropriation.  901 So. 2d 802 (Fla. 2005).  The *Tyne* court's determination was premised on Florida's commercial misappropriation statute which is not apposite to the present situation.  *Id*., 901 So. 2d at 810.

in a tattoo magazine was "not protected under the legitimate-public-interest exception"). The defendants' conclusory argument that "Alabama courts have long recognized a constitutional limitation to invasion of privacy claims that involve publicity" and that "this case is no different" than those cited, is not persuasive. (Doc. 7 at ¶¶ 27 & 29).

The defendants also cite to Section 47 of the Third Restatement of Unfair Competition and to a comment associated therewith. Section 47 of the Restatement (Third) of Unfair Competition defines "the purposes of trade" as follows:

> The names, likeness, and other indicia of a person's identity are used "for the purposes of trade" ... if they are used in advertising the user's goods or services, or are placed on merchandise marketed by the user, or are used in connection with services rendered by the user. However, use "for the purpose of trade" does not ordinarily include the use of a person's identity in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising incidental to such uses.

Rest. 3d Uncom. § 47 (1995). The comment provides, in pertinent part:

> .... The interest in freedom of expression also extends to use in entertainment and other creative works, including both fiction and nonfiction.... Use of another's identity in a novel, play, or motion picture is also not ordinarily an infringement. The fact that the publisher or other user seeks or is successful in obtaining a commercial advantage from an otherwise permitted use of another's identity does not render the appropriation actionable. However, if the name or likeness is used solely to attract attention to a work that is not related to the identified person, the user may be subject to liability for a use of the other's identity in advertising....

Rest. 3d Uncom. § 27, comment c (1995). While persuasive authority in support of the defendants' argument, Alabama has not adopted that aspect of the Restatement.

Lastly, the defendants assert that the present matter is due to be dismissed because, even if the defendants used the plaintiff's image and character in the movie, that use is protected under the First Amendment as an expressive work. (Doc. 7 at 11 & n.8). The court agrees.

"Works of artistic expression such as movies, plays, books, and songs" are protected by the First Amendment. *Nichols v. Moore*, 334 F. Supp. 2d 944, 956-56 (E.D. Mich. 2004). *See also Armstrong v. Eagle Rock Entertainment, Inc.,* 655 F. Supp. 2d 779, 786 (E.D. Mich. 2009) (holding that the use of a picture depicting the plaintiff performing could not support a misappropriation claim because it was "part of this 'work of artistic expression'"); *Thoroughbred Legends, LLC v.The Walt Disney Co*., 2008 WL 616253 (N.D. Ga. 2008) (holding that the use of the plaintiffs' names and likeness in connection with a movie regarding a famous horse was protected as an expressive work under the First Amendment); *Daly v. Viacom, Inc*., 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (holding that the plaintiff's appropriation action concerning a television program was due to be dismissed under the First Amendment as it involved an expressive work).

In the present case, the use of the plaintiff's likeness in a very limited segment of the movie *Despicable Me* cannot support a claim for commercial misappropriation. The movie is clearly an expressive work protected under the First Amendment.[8] The plaintiff has not cited any

---

[8]The Tenth Circuit Court of Appeals in discussing the First Amendment protections in a case involving a "parody trading cards producer" against Major League Baseball Players Association stated:

> The cards are no less protected because they provide humorous rather than serious commentary. Speech that entertains, like speech that informs, is protected by the First Amendment because "[t]he line between the informing and the entertaining is too elusive for the protection of that basic right." *Winters v. New York*, 333 U.S. 507, 510, 68 S. Ct. 665, 667, 92 L. Ed. 840 (1948); *see Zacchini v.* [*Scripps-Howard Broadcasting Co*]., 433 U.S. 562, 578, 97 S. Ct. 2849, 2859, 53 L. Ed. 2d 965. Moreover, Cardtoons makes use of artistic and literary devices with distinguished traditions. Parody, for example, is a humorous form of social commentary that dates to Greek antiquity, and has since made regular appearances in English literature. *See L.L. Bean, Inc. v. Drake Publishers, Inc*., 811 F.2d 26, 28 (1st Cir.), appeal dismissed and *cert. denied*, 483 U.S. 1013, 107 S. Ct. 3254, 97 L. Ed. 2d 753 (1987). In addition, cartoons and caricatures, such as those in the trading cards, have played a prominent role in public and political debate throughout our nation's history. *See Hustler Magazine v. Falwell*, 485 U.S. 46, 53-55, 108 S. Ct. 876, 880-82, 99 L. Ed. 2d 41 (1988). Thus, the trading cards' commentary on these public figures and the major commercial enterprise in which they work receives no less protection because the cards are amusing.

95 F.3d at 969. Similarly, the court finds that the animated movie in this case is entitled to the same protection.

authority that convinces the court otherwise.

### The Trailer

As noted previously, a trailer is a device used by production and film companies as a tool to promote upcoming movies. The defendants argue that because the movie itself is constitutionally protected, the trailer should be protected as well. (Doc. 7 ¶ 36). The plaintiff retorts that the use of a trailer is a purely commercial tool that is not protected. (Doc. 9 at 8).

The court finds that although the trailer is a commercial tool as suggested by the plaintiff, it is protected under the First Amendment as it is a part of a protected expressive work. *See Whitehurst v. Showtime Networks, Inc.*, 2009 WL 3052663, *8 (E.D. Tex. Sep. 22, 2009) (holding that promotion of a film, including the DVD cover, is protected as the film is not subject to liability); *Thoroughbred Legends*, 2008 WL 616253, *12 (holding that the use of the plaintiffs' likeness in advertising the film is protected because the film itself is protected);[9] *Nichols*, 334 F. Supp. 2d at 957 (holding that "'if a video documentary contains an uncontested, though protected, use of a person's likeness, there is little question that an advertisement for the documentary containing a clip of that use would be permissible'") (quoting *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 414, 114 Cal. Rptr. 2d 307 (2001)); *Daly*, 238 F. Supp. 2d at 1123 (holding that as the television program "is an expressive work protected by the First Amendment, plaintiff cannot state a misappropriation claim based on the use of her likeness in the program or the advertisements for the program"); *Page v. Something Weird Video*, 960 F. Supp. 1438, 1444 (C.D. Cal. 1996) (holding that the defendants' "advertising is protected because the videos themselves are protected by the First Amendment, and the advertising is

---

[9]In so holding, the court was persuaded by the *Restatement (Third) of Unfair Competition* § 47 cmt. n. c.

incidental to the protected publication of the videos"); *Guglielmi v. Spelling-Goldberg Productions*, 603 P.2d 454 (Cal. 1979) (holding that use of image in advertisement of film was not actionable in that it did nothing more than promote the film).

### Motion to Strike Affidavit of Corey L. Fischer

The defendants also have filed a motion to strike the affidavit of Corey L. Fisher. The affidavit was offered as evidence in support of the plaintiff's response to defendants' motion to dismiss. (See Doc. 9-1). In it, Fisher states that he knows the plaintiff "personally and professionally." (*Id*. at ¶ 3). He further asserts that the plaintiff's "unique likeness is famous and well known." (*Id*. at ¶ 6). When he saw the trailer, he "was certain that the character being portrayed was Butterbean in that the likeness was remarkably similar ..." especially with the "characteristic entrance music that was playing while this character was on the screen." (*Id*. at ¶ 7). Finally, Fisher states that after he saw the trailer, he reviewed it on the Internet with others who all agree with him "that the likeness and image of Butterbean was included." (*Id*. at ¶ 9).

The defendants argue that this evidence should not be considered by this court in its analysis of the motion to dismiss because it is outside "the four corners of the complaint." (Doc. 11 ¶ 1). They further assert that it is not based on "personal knowledge that a 'reasonable person' might confuse the animated character in the trailer with the plaintiff, only that a person with a twenty-year personal and professional association with the plaintiff might make such an association." (*Id*. at ¶ 5). Lastly, they assert that the affidavit contains inadmissible hearsay. (*Id*. at ¶ 6).

The court agrees with the defendants that the evidence is due to be stricken. The motion is due to be granted for a number of reasons. First, the evidence is outside the scope of a motion

to dismiss. As recently stated by the Eleventh Circuit,

> A court's review on a motion to dismiss is "limited to the four corners of the complaint." *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002). A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam).

*Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). The dispositive issue presented in the motion, concerning the First Amendment, is a question of law for the court. Second, the articulated, conclusory impressions of others relayed to Fisher and articulated in paragraph nine of the affidavit are inadmissible hearsay. Third, the court has resolved the pertinent issues as a matter of law, obviating the need to examine the affidavit. Accordingly, this court did not consider this evidence in its analysis of the defendants' motion.

## CONCLUSION

Premised on the foregoing, the court finds that the defendants' motion to dismiss (doc . 7) and motion to strike (doc. 11) are due to be granted. An appropriate order will be entered.

**DONE**, this the 1st day of November, 2010.

_____
**JOHN E. OTT**
United States Magistrate Judge